Owen, J.
As we rest the disposition of this case upon the single question, whether the facts found bjr the trial court were sufficient to authorize the judgment rendered by it, none of the other numerous questions which the record presents are discussed in this opinion. By the findings of fact it will be seen that the railroad company proposed to extend its line of road over a designated route to the Ohio rivei’, opposite the city of Wheeling, provided that subscriptions to its capital stock would be made by persons residing along the proposed line and near the southern terminus thereof, aggregating the sum of $250,000. That Ilenry Wallace, with other citizens of Wheeling, knowing of such proposition and being desirous to promote such extension, held a public meeting and appointed a committee to solicit subscriptions to the capital stock of the company. That Wallace thereafter, at the solicitation of this committee, signed the two papers declared upon, each in a book furnished’ by the committee. That other persons *545 had previously signed these subscriptions. That upon his signing these writings, respectively, he delivered them to the committee. That he soon thereafter died — these books remaining in the hands of the committee.
That after his death, and when all the subscriptions to stock had been procured along the proposed line and near the southern terminus that the committee was able to secure, and which aggregated less than the proposed $250,000, the evidences of all these subscriptions were, at the instance of the surviving subscribers, tendered to and accepted by the company, which then agreed to extend its line of road as had before been pi’oposed. That at the time of such acceptance and agreement the officer’s of the company had no notice or information of the death of Henx’y Wallace. That before July. 1, 1877, the company commenced the construction of the proposed^ extension, and did, within a reasonable time thereafter,.fully, complete it.
Did the estate of Henry Wallace become bound by these subscriptions upon their delivery to and acceptance by the railroad company ?
The proposition of the company was made at lax’ge,. and not to these subscribers, mox’e than to any others, who .should first subscribe the required $250,000. It does not even appear that the company knew, at any time prior to Wallace’s death, of the existence of this committee, or that these subscriptions wex’e being procured. The company was not bound to accept Wallace’s subscription at any time during his life. It had made no agreement with Wallace or with his co:subseribers. So far as the findings show, the company had no knowledge that Wallace ,had subscribed, and nothing was done by it on the faith of his subscription prior to his death. Suppose that another committee, having heard of the proposition of the company, had succeeded in procuring the requisite $25.0,000 in subscriptions, tendered it to the company, which had accepted it, and agreed to perfox’m its conditions before this committee had tendered its subscriptions; would it be contended *546 that the company -would have been under any obligation to accept them ? If any thing is claimed from the proposition of the company and its acceptance by the subscribers, it is a sufficient answer, to say that the conditions of the proposition have never to this day been performed; that after the death of Wallace his surviving subscribers, finding that they had failed to raise the amount which the company had demanded in its proposition, proposed new terms to the company, tendered a less amount in subscriptions, which was accepted; and thereupon, for the first time in the history of these transactions, the company agreed, on its part, to perform the conditions upon wffiich the subscriptions were made. And this was a new contract, to which Wallace was never a consenting party. Thus we see that the negotiations which actually led to the creation of mutual .and binding obligations between the company and the surviving subscribers transpired after the death of Wallace. It is maintained, however, that various persons subscribed after Wallace and on the faith of his subscription. This does not appear from the findings of fact. For all that is shown by this finding, Wallace may have been the very last subscriber. If these surviving subscribers consented to the delivery to the company of a dead mao’s subscription, they are in no situation to- complain. It is also maintained that the company built the road on the faith of the subscription of Wallace and his co-subscribers. It appears that at the time of the company’s acceptance and agreement, its officers had no knowledge of Wallace’s death; but so far as the record shows to the contrary, it began the work with full knowledge that this committee had teudered it a dead man’s paper. Counsel for the company maintain that the committee so often referred to, which took these subscriptions, was rather the agent of the railway company than of Wallace, . . the company having ratified their action.” If this view is tenable, then, by a familiar rule, notice to this committee, was notice to the company of the death of Wallace ; for it will be observed that there is no finding that the company *547 had no notice of Wallace’s death, hut that its officers had none. Ordinarily notice is carried to a corporation through its officers, hut not necessarily so. While its officers are in a sense agents, its agents are not necessarily officers. Hence if this committee was the agent of the company, by reason of the ratification of its acts by the latter, notice to the committee was notice to the company; and it would be incumbent upon the latter to show that its agent had no notice of the death of Wallace. This is not shown. We do not deem it necessary, however, to rest our determination upon this view.
Until some action is taken on the basis of a subscription to a benevolent or other enterprise, it may be revoked. The promise in such case stands as a mere offer, and may? by necessary implication, be revoked at any time before it is acted on. It is the expending of money, etc., or incurring of legal liability, on the faith of a promise, which gives the right of action, and without which there is no right of .action. Until action upon it there is no mutuality, and being only an offer, and susceptible of revocation at any time before being acted upon, it follows that the death- (or insanity) of the promisor, before the offer is acted upon, is a revocation of the offer. Pratt v. Trustees, 93 Ill. 475. See also Beach v. Church, 96 Ill. 179; 1 Wharton Con. §§ 12, 528; Pollock Con. 20 ; Dickinson v. Dodds, L. R. 2 Ch. Div. 475; Tayloe v. Mer. Fire Ins. Co., 9 How. (U. S.) 390; 1 Redfield Railways, *203.
Here was an unaccepted conditional subscription by Wallace to the capital stock of the company. Indeed, looking to its substance and plain intent rather than to its form, we find it to be no more than an offer to subscribe to stock upon certain named conditions. It was not a subscription to stock in the ordinary sense of that term. The company was not a party to it, and was under no obligation to accept it at any time during the life of Wallace. It was at best an unaccepted proposal. Before its acceptance, and indeed (so far as it is made to appear to us) before the party do whom it was made had notice of it, the proposer died. *548 It was a proposal capable of revocation at any time before acceptance, and death worked its complete revocation. There was error in rendering judgment upon it against the defendants below, for which error the

Judgments below are reversed.